UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**RICKY FOREMAN, ET AL.**                                   **CASE NO. 2:23-CV-00076**

**VERSUS**                                                  **JUDGE JAMES D. CAIN, JR.**

**THE PROCTER & GAMBLE CO.**                                **MAGISTRATE JUDGE KAY**

MEMORANDUM RULING

Before the Court is a Motion to Dismiss [doc. 15] filed under Federal Rule of Civil Procedure 12(b)(6) by the Defendant, The Procter & Gamble Company ("P&G"). Plaintiffs Ricky Foreman, Amy Nicole Stewart, and Eric Foreman oppose the motion. Doc. 20.

I.
BACKGROUND

This product liability lawsuit concerns the safety of aerosol products manufactured by P&G, which allegedly caused the death of Arlene Foreman. Doc. 1-3 at ¶¶ 4-7. Ricky Foreman is the surviving spouse of Arlene Foreman. *Id.* at ¶ 28. Amy Nicole Stewart and Eric Foreman are her surviving children. *Id.* at ¶ 29. Plaintiffs allege that Arlene Foreman regularly used two types of products manufactured by P&G: "Secret Powder Fresh 24 HR Aerosol" antiperspirant spray and "certain Pantene dry shampoos."[1] *Id.* at ¶¶ 4–7. Plaintiffs state that Arlene Foreman applied the products multiple times a day, every day, usually in an enclosed space, which resulted in the inhalation of the aerosol products. *Id.*

---

[1] Plaintiffs indicate that Pantene dry shampoo was listed as one of the products used by Arlene Foreman out of an abundance of caution, but that the reference would be redacted if they are allowed to amend their complaint. Doc. 20 at 28. Accordingly, this opinion only addresses the plausibility of Plaintiffs' claims regarding the use of Secret Powder Fresh 24 HR Aerosol antiperspirant. However, the Court notes that Plaintiffs' claims regarding Pantene dry shampoo have the same deficiencies addressed herein.

at ¶¶ 5-6. Plaintiffs also allege that the antiperspirant spray was frequently applied after shaving and was absorbed into Arlene Foreman's bloodstream. *Id.* at ¶¶ 7, 25

Plaintiffs allege that on November 4, 2021, Valisure, LLC ("Valisure"), an independent testing lab, announced that it had detected high levels of benzene, a known human carcinogen, in several brands of antiperspirant sprays and dry shampoo sprays manufactured and sold by P&G, including the sprays used by Arlene Foreman. *Id.* at ¶ 10. Specifically, Plaintiffs allege that Valisure tested three batches of Secret Powder Fresh 24 HR Aerosol antiperspirant spray, one of which was cross-tested by the Chemical and Biophysical Instrument Center at Yale University. *Id.* at ¶¶ 11-12. Plaintiffs maintain that both testing labs "found excessively high amounts of Benzene within P&G's Secret Powder Fresh 24 HR Aerosol antiperspirant spray." *Id.* at ¶ 13.

Plaintiffs contend that benzene is a biproduct of the chemical process used to create the aerosol antiperspirant, and "each and every bottle of Secret Powder Fresh 24 HR Aerosol antiperspirant contained excessively high amounts of the human carcinogen, benzene." *Id.* at ¶¶ 14-15. Plaintiffs allege that benzene was not listed as an ingredient on either product. *Id.* at ¶ 17. Further, Plaintiffs contend that neither product included a warning or any other label notifying users that the product contained benzene or warned of the health effects posed by exposure to benzene. *Id.* at ¶ 18.

Arlene Foreman died from multiple myeloma, a rare blood cancer, on February 13, 2022. *Id.* at ¶¶ 2-3. Plaintiffs allege that she "contracted multiple myeloma secondary to her consistent exposure to unusually high levels of benzene contained in the products produced, manufactured and sold to her by defendant, P&G." *Id.* at ¶ 24.

Plaintiffs, as the surviving spouse and children, assert wrongful death claims against P&G pursuant to Louisiana Civil Code article 2315.2(A)(1). *Id.* at ¶¶ 30-33. Plaintiffs also assert a claim against P&G under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. § 9:2800.51, et seq. *Id.* at ¶ 40. Plaintiffs allege that the P&G products used by Arlene Foreman were unreasonably dangerous in (1) construction or composition, (2) design, (3) failing to provide an adequate warning, and (4) lack of conformance to an express or implied warranty of the manufacturer. *Id.*

P&G moves to dismiss the claims raised against it, arguing that Plaintiffs' Amended Complaint fails to plausibly allege that Arlene Foreman's injury was caused by her use of P&G products. Doc. 15-1 at 12. P&G also argues that Plaintiffs' Amended Complaint fails to state a claim that P&G's products were unreasonably dangerous. Doc. 15-1 at 17. Plaintiffs oppose the motion, object to certain exhibits attached to the motion[2], and request leave to amend their complaint if the Court grants a dismissal in whole or in part. Doc. 20. Plaintiffs also submitted an affidavit by David Light, CEO of Valisure.[3] Doc. 20-1.

## II.
## LEGAL STANDARD

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court may also consider documents referenced in and central to a party's claims only

---

[2] The Court did not consider the contested exhibits in determining its ruling.

[3] The Court cannot consider Mr. Light's affidavit because it is outside the scope of the Plaintiffs' Amended Complaint. *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

if plaintiffs do not object. *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). In evaluating a motion to dismiss, courts "may also consider matters of which [it] may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III.
## LAW AND ANALYSIS

### A. The Louisiana Products Liability Act

The LPLA provides the exclusive means to pursue liability against manufacturers for damage caused by their products. La. Rev. Stat. § 9:2800.52. "Damage" is defined by the LPLA to include all damage caused by a product, including wrongful death damages under Civil Code articles 2315.2. *Whalen v. Monsanto*, 2023 WL 3995718, at *3 (E.D. La. June 14, 2023) (citing La. Rev. Stat. § 9:2800.53(5)).

To state a claim under the LPLA, a plaintiff must establish four elements: (1) that the defendant is the manufacturer of the product; (2) the injury or damage was proximately

caused by a characteristic of the product; (3) the characteristic made the product unreasonably dangerous; and (4) the damages arose from a reasonably anticipated use of the product. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002). A plaintiff can show that a product was unreasonably dangerous under one of four theories: (1) construction or composition; (2) defective design; (3) due to an inadequate warning; or (4) lack of conformance to an express warranty. *Stahl*, 283 F.3d at 261; La. Rev. Stat. § 9:2800.54. In this case the only elements at issue are proximate cause and whether the products were unreasonably dangerous.

    1. **Proximate Cause**

As noted, to establish liability under the LPLA a plaintiff must demonstrate that the injury or damage was proximately caused by a characteristic of the product in question. P&G argues that Plaintiffs have failed to plausibly allege that Arlene Foreman's multiple myeloma was proximately caused by benzene found in P&G products. Doc. 15-1 at 12.

First, P&G argues that Plaintiffs' Amended Complaint does not plausibly allege that Arlene Foreman actually used P&G products that contained benzene. *Id.* at 13. The Amended Complaint alleges that "each and every bottle of Secret Powder Fresh 24 HR Aerosol antiperspirant contained excessively high amounts of the human carcinogen, benzene." Doc. 1-3 at ¶¶ 14-15. P&G claims that this statement is conclusory and unsupported by sufficient factual allegations. Doc. 15-1 at 13. P&G argues that the Valisure report, on which Plaintiffs rely, is insufficient to support the statement that each and every bottle of Secret antiperspirant it produced contained benzene. *Id.* at 14. P&G contends that, at most, the Valisure report shows that it tested some batches of Secret

antiperspirant and that only certain of those batches contained benzene. *Id.* Further, P&G notes that there are no allegations that the actual cans of antiperspirant used by Arlene Foreman have been tested, or that the lot numbers of the cans used by Arlene Foreman matched those lot numbers listed in the Valisure report. *Id.* Without these specific allegations, P&G argues that the Amended Complaint is conclusory in nature. *Id.*

Plaintiffs counter that they have plausibly alleged that Arlene Foreman's multiple myeloma was proximately caused by benzene in P&G's products, particularly the Secret Powder Fresh 24 HR Aerosol spray. Doc. 20 at 13. Plaintiffs argue that every batch of Secret tested by Valisure contained benzene, and the specific type of Secret used by Arlene Foreman, Secret Powder Fresh 24 HR Aerosol spray, was found to contain the highest amounts of all body sprays tested.[4] *Id.* Thus, Plaintiffs claim that all cans of the specific brand and type used by Arlene Foreman contained high levels of benzene. *Id.* at 14-16. Plaintiffs also allege that every one of the Secret aerosol sprays used by Arlene Foreman contained benzene because it was a biproduct of the chemical process used to create the product. *Id.* at 17.

The Valisure report indicates that Valisure analyzed 108 unique batches from 30 brands of body spray products and found that 59 of the batches contained detectable levels of benzene. Doc. 15-2 at 13. The report also reveals that 8 batches of various types of Secret body sprays were analyzed, and all were found to contain benzene in varying

---

[4] In support, Plaintiffs cite to the Affidavit of Valisure CEO, David Light. Doc. 20 at 13; Doc. 20-1. As previously noted, the Court cannot consider Mr. Light's affidavit. However, the Court may consider the Valisure report because it is specifically referenced by Plaintiffs in their Amended Complaint. Doc. 1-3 at ¶ 10.

amounts. *Id.* at 13-14. Three batches of Secret Powder Fresh 24 HR Aerosol were tested, and all three were found to contain benzene at 2.00 ppm or higher. *Id.* at 13. However, the Court also notes that the Valisure report indicates that the level of benzene found throughout its study was highly variable, stating: "[t]here was significant variability from batch to batch, even within a single brand, underscoring the importance of batch-level chemical analysis and the necessity of overall increased quality surveillance of these pharmaceutical and consumer products." *Id.* at 9.

Upon careful review, the Court is not convinced that Plaintiffs' Amended Complaint asserts a plausible claim. Missing from Plaintiffs' Amended Complaint is an allegation that the actual bottles of antiperspirant spray used by Arlene Foreman were of the same batch or lot number tested by Valisure or any other lab. Instead, Plaintiffs make the sweeping allegation that every bottle of Secret Powder Fresh 24 HR antiperspirant ever produced by P&G contained benzene as a byproduct of the chemical process used to create the spray antiperspirant. Doc. 1-3 at ¶¶ 15-16. Plaintiffs are asking the Court to infer the causal connection without providing information concerning the batch or lot number of any can of spray actually used by Arlene Foreman. This missing element combined with Valisure's own statement regarding significant variability in the level of benzene from batch to batch tested, even within a single brand, lead the Court to conclude that Plaintiffs have not stated a plausible causal connection.

Second, P&G argues that Plaintiffs have failed to plausibly allege that Arlene Foreman's multiple myeloma was proximately caused by the alleged benzene in the products that she used. Doc. 15-1 at 15. Defendant contends that Plaintiffs' allegation that

"the development of multiple myeloma as a result of benzene exposure has been well documented, and death resulting from multiple myeloma has been associated with benzene exposure" is a conclusory statement, wholly unsupported by any factual allegations in the Amended Complaint. *Id.* P&G notes that the Amended Complaint lacks any scientific evidence or other facts linking benzene to Arlene Foreman's blood cancer. *Id.* P&G also argues that benzene is commonly found from a number of sources, including gasoline fumes, car exhaust, and cigarette smoke, and Plaintiffs have not plausibly alleged that Arlene Foreman's cancer was caused by her use of Secret antiperspirant rather than some other source. *Id.* at 8-9, 15.

Plaintiffs respond that their petition sets forth that Arlene Foreman was diagnosed with multiple myeloma, a type of cancer documented to result from benzene exposure, which Arlene Foreman was exposed to daily for years from P&G's products. Doc. 20 at 17. Plaintiffs contend that at this stage of the proceedings, this allegation is sufficient. *Id.* at 20. However, Plaintiffs offer additional information not contained in their Amended Complaint, including statements from the international Myeloma Foundation and the American Cancer Society regarding an association between benzene exposure and multiple myeloma. *Id.* at 17-18. Plaintiffs also cite to an evidentiary finding in *Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771 (E.D. La. 2011), a case involving an industrial worker who was allegedly exposed to products containing benzene as part of his job. *Id.* at 18-19. Therein, two studies relating to a link between benzene and multiple myeloma were noted. *Wagoner*, 813 F.Supp.2d at 801. The Court cannot consider Plaintiffs' new citations to

statements by the Myeloma Foundation, the American Cancer Society, or the studies noted in the *Wagoner* case because the materials are not attached to or referenced in the pleadings.

The Amended Complaint states: "[t]he development of multiple myeloma as a result of benzene exposure has been well documented, and death resulting from multiple myeloma has been associated with benzene exposure." Doc. 1-3 at ¶ 22. This statement on its own is conclusory. Additional allegations, such as a reference to a specific scientific study, are required to plausibly state that benzene exposure at the levels indicated in the Valisure report can cause multiple myeloma. As such, the Court finds that Plaintiffs have failed to sufficiently allege that benzene exposure at the levels indicated in the Valisure report proximately caused Arlene Foreman to develop multiple myeloma.

**2. Unreasonably Dangerous Characteristic**

In addition to causation, to properly assert a claim under the LPLA a plaintiff must also allege facts that identify the unreasonably dangerous characteristic of a product under one of four theories: (1) defective construction or composition; (2) defective design; (3) due to an inadequate warning; or (4) lack of conformance to an express warranty. La. Rev. Stat. § 9:2800.54; *Stahl*, 283 F.3d at 261. Plaintiffs' Amended Complaint states that Secret Powder Fresh 24 HR Aerosol antiperspirant is unreasonably dangerous under all four categories. Doc. 1-3 at ¶¶ 39-40. P&G argues that the Amended Complaint only offers conclusory statements that are insufficient to properly allege that the product was unreasonably dangerous under any of the four categories. Doc. 15-1 at 17.

### a. Construction / Composition

"A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La Rev. Stat. § 9:2800.55.

P&G argues that Plaintiffs' Amended Complaint is devoid of any allegations regarding the specifications or performance standards for Secret Powder Fresh 24 HR Aerosol antiperspirant or how the antiperspirant deviated from those standards to render the product unreasonably dangerous. Doc. 15-1 at 18. Plaintiffs counter that they have alleged that the antiperspirant contained benzene, which is a deviation from P&G's specifications. Doc. 20 at 23.

The Court agrees with P&G that Plaintiffs' allegations are conclusory. P&G's recall of certain antiperspirants suggests that those batches deviated from its own product standards. However, without a matching reference in the Amended Complaint of the batches or lot numbers from the actual products used by Arlene Foreman to the batches or lot numbers of the products recalled, the allegations in the Amended Complaint are merely conclusory.

### b. Design Defect

"A product is unreasonably dangerous in design if, at the time it left its manufacturer's control: (1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the

burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." La. Rev. Stat. § 9:2800.56.

P&G argues that Plaintiffs failed to plead that an alternative design existed for the antiperspirant spray. Doc. 15-1 at 19. P&G also notes the lack of any allegations regarding the gravity of damage compared to the burden of adopting an alternative design. *Id.* Plaintiffs counter that they alleged P&G "failed to design the products to contain available and suitable components other than benzene" and "to sell benzene-free products[.]" Doc. 20 at 24. The Court agrees with the Defendant. Plaintiffs' Amended Complaint fails to plead that there was an alternative design for the product or the burden of adopting the alternative design. *See Kennedy v. Pfizer, Inc.*, 2014 WL 4092918, at *4 (W.D. La. Aug. 15, 2014).

### c. Failure to Warn

A product is unreasonably dangerous due to a failure to warn if, "at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La Rev. Stat. § 9:2800.57(A).

P&G argues Plaintiffs' have failed to properly allege a failure to warn claim because the Amended Complaint does not plausibly allege that the products used by Arlene Foreman possessed a characteristic that could cause damage. Doc. 15-1 at 21. Moreover, P&G notes that the complaint does not contain an allegation that it violated any federal regulation or requirement in its labeling. *Id.* Plaintiffs counter that they have alleged that

P&G knew or should have known that the antiperspirant contained benzene and failed to properly warn its consumers.[5]  Doc. 20 at 25.

As with Plaintiffs' claim regarding construction or composition, this claim also lacks a reference to a batch or lot number of the product used by Arlene Foreman that corresponds with either the Valisure report or P&G's voluntary recall notice.  Without this information Plaintiffs' allegations are merely conclusory in nature.

### d. Breach of Express or Implied Warranty

P&G first argues that Plaintiffs' allegations for a breach of implied warranty must be dismissed because it is barred by the LPLA, which is the exclusive remedy for products liability under Louisiana law. Doc. 15-1 at 22.  The Court agrees with the Defendant.  The LPLA does not allow for recovery based on a breach of implied warranty. *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F.Supp. 241, 245 (E.D. La. 1996). Plaintiffs' claim based on a breach of implied warranty must be dismissed.

"A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue." La Rev. Stat. § 9:2800.58.  "An 'express warranty' is a representation or statement about a product that affirms the product possesses specified characteristics or qualities." *Fuller v. Eisai Inc.*, 513 F.Supp.3d 710, 721 (E.D. La. 2021); La. Rev. Stat. § 9:2800.53(6).

---

[5] Plaintiffs also argue that P&G affirmatively represents on its website that their products do not contain benzene. Doc. 20 at 26.  The Court cannot consider this information because it is not referenced or attached to the Amended Complaint.

As to Plaintiffs' allegations regarding a breach of an express warranty, P&G argues that the Amended Complaint fails to identify any warranty made by P&G or how it was breached. Doc. 15-1 at 23. Plaintiffs counter that they have alleged that P&G did not list benzene as an active or inactive ingredient, which is a representation that their products were free of benzene and safe to use. Doc. 20 at 27.

Plaintiffs' allegation that benzene was not listed as an active or inactive ingredient is insufficient to allege a breach of express warranty under the LPLA. A "plaintiff must allege the content of the warranty and explain how the warranty was not true." *Donald v. Astrazeneca Pharm.*, 2017 WL 1079186, at *4 (E.D. La. Mar. 3, 2017). An ingredient list is not synonymous with an express warranty because it does not affirm a specified characteristic or quality. The absence of benzene as an ingredient may imply that it was not present, but this is not an implicit statement or affirmative guarantee. *Moore v. BASF Corp.*, 2012 WL 6025917, at *5 (E.D. La. Dec. 4, 2012) (dismissal of breach of express warranty for products containing benzene). Accordingly, Plaintiffs' claim based on a breach of express warranty must also be dismissed.

### B. Leave to Amend

Plaintiffs have requested the Court grant leave to amend their complaint to properly state a claim. Doc. 20 at 28. Defendant opposes, arguing that leave to amend should not be granted because Plaintiffs already amended their complaint once while in state court and have failed to cure its deficiencies. Doc. 22 at 7.

A Court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, leave to amend is

not automatic. *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). Factors to consider in determining whether leave should be allowed include: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice on the opposing party, and futility of the amendment." *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

The Court finds that none of the factors suggest that leave should not be allowed in this case. Plaintiffs filed a single Supplemental and Amended Complaint while the case was in state court. Given the complexity of the allegations involved in this case, the Court is satisfied that the request is made in good faith and will not unduly prejudice the Defendant. Accordingly, Plaintiffs are **GRANTED** leave to amend their complaint.

## IV.
## CONCLUSION

For the reasons stated above, P&G's Motion to Dismiss [doc. 15] is **GRANTED** and Plaintiffs' claims against P&G are **DISMISSED WITHOUT PREJUDICE** to their right to amend their complaint within sixty days and cure the deficiencies noted above.

**THUS DONE AND SIGNED** in Chambers on this 20th day of December, 2023.

_____
**JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE**