**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

|  |  |
|---|---|
| **RICKY FOREMAN, AMY NICOLE STEWART, and ERIC FOREMAN,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE PROCTER & GAMBLE COMPANY,**<br><br>**Defendant.** | **CIVIL ACTION NO. 2:23-cv-00076**<br><br>**JUDGE JAMES D. CAIN, JR.**<br><br>**MAG. JUDGE THOMAS LEBLANC**<br><br>**JURY TRIAL REQUESTED** |

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S ANSWER**
**AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'**
**SECOND AMENDED COMPLAINT**

Defendant The Procter & Gamble Company ("P&G"), by and through its attorneys, responds as follows to the allegations in Plaintiffs' Second Amended Complaint, dated February 13, 2024 ("Complaint"). P&G denies any and all allegations of wrongdoing, denies that Plaintiffs are entitled to any relief, and denies all allegations that are not expressly admitted below. To the extent the Complaint asserts conclusions of law, such conclusions of law require no response. To the extent that the Complaint's headings, subheadings, or table of contents contain factual allegations, they are denied.

P&G further answers each numbered paragraph in the Complaint as follows:

1. P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and on that basis, denies them.

2. Paragraph 2 of the Complaint contains legal conclusions to which no response is required. To the extent a response may be required, P&G admits the allegations in Paragraph 2 of the Complaint.

3.      P&G admits that its products are distributed to and sold in Louisiana.  P&G denies that it manufactures any products at issue in the Complaint in Louisiana.  P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3 of the Complaint and, on that basis, denies them.

4.      Paragraph 4 of the Complaint contains legal conclusions to which no response is required.  P&G admits that the allegations in the Complaint are sufficient to establish that this Court has subject matter jurisdiction and personal jurisdiction over this dispute.  To the extent any further response may be required, P&G denies the allegations in Paragraph 4 of the Complaint.

5.      Paragraph 5 of the Complaint contains legal conclusions to which no response is required.  P&G further admits that Plaintiffs purport to summarize 28 U.S.C. § 1332 and to interpret or state the contents of this statute.  P&G denies any characterization of that statute that is inconsistent with its content.  P&G admits that the allegations in the Complaint are sufficient to establish that this Court is a proper venue for this dispute.  To the extent any further response may be required, P&G denies the allegations in Paragraph 5 of the Complaint.

6.      P&G admits that a product bearing the brand name "Secret" was introduced in the 1950s and that "Secret" brand products have been distributed to and sold in Louisiana.  P&G otherwise denies the remaining allegations in Paragraph 6 of the Complaint.

7.      P&G admits an aerosol product called Secret Super Spray was launched in 1964.  P&G otherwise denies the remaining allegations in Paragraph 7 of the Complaint.

8.      P&G admits that a "Powder Fresh" scent for Secret products was introduced in the 1980s.  P&G otherwise denies the remaining allegations in Paragraph 8 of the Complaint.

9.      P&G admits that Valisure issued a press release on November 4, 2021, in which it claimed to have identified benzene in certain body spray products.  To the extent that Paragraph 9 of the Complaint purports to summarize, interpret, or quote from that press release, that press release speaks for itself, and P&G denies any characterization of that press release that is inconsistent with its content.  P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 of the Complaint, and on that basis, denies them.

10.      P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, and on that basis, denies them.

11.      P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and on that basis, denies them.

12.      P&G denies that any of its products contain "excessively high amounts of Benzene."  P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 of the Complaint, and on that basis, denies them.

13.      P&G denies that any of its products contain "excessively high amounts of benzene."  To the extent that Paragraph 13 of the Complaint purports to summarize, interpret, or quote from David Y. Light's affidavit, that affidavit speaks for itself, and P&G denies any characterization of that affidavit that is inconsistent with its content.  P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 of the Complaint, and on that basis, denies them.

14.      P&G admits that, as stated in the website cited in footnote 2 of Paragraph 14 of the Complaint, P&G announced a voluntary recall of certain aerosol deodorant products "due to

the presence of benzene detected in some products."  P&G avers that, as stated in the same website, "[d]aily exposure to the level of benzene detected would not be expected to cause adverse health consequences," and that P&G "conduct[ed] this recall out of an abundance of caution."  P&G denies any inference of wrongdoing from those voluntary recalls, and P&G denies any inference of wrongdoing from any of the allegations in Paragraph 14 of the Complaint.  Except as otherwise admitted, P&G denies the remaining allegations in Paragraph 14 of the Complaint.

15.     P&G denies the allegations in Paragraph 15 of the Complaint to the extent that P&G's voluntary recall announcement cited in footnote 2 of Paragraph 14 of the Complaint specified that the benzene levels detected "would not be expected to cause adverse health consequences."  P&G further denies the allegations in Paragraph 15 of the Complaint to the extent that P&G's voluntary recall announcement dated December 17, 2021, stated that P&G "began a review of our total portfolio of aerosol products" and identified specific UPC numbers and Production Code Ranges subject to the voluntary recall.  P&G otherwise admits the allegations in Paragraph 15 of the Complaint.

16.     P&G denies the allegations in Paragraph 16 to the extent that the Valisure Citizen's Complaint to the FDA is not attached to the Complaint.  P&G admits that UPC numbers 037000711087 and 037000711094 were identified in its voluntary recall announcements as subject to the voluntary recall.  P&G otherwise admits the allegations in Paragraph 16 of the Complaint.

17.     P&G admits the allegations in Paragraph 17 of the Complaint.

18.     P&G admits that the voluntary recall statement referenced in Paragraph 18 of the Complaint and linked in footnote 2 of Paragraph 14 of the Complaint contains the language

"[Benzene] is classified as a human carcinogen, a substance that could potentially cause cancer depending on the level and extent of exposure."  P&G denies any inference of wrongdoing from the language of its voluntary recall announcements or the allegations in Paragraph 18 of the Complaint.

19.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint, and on that basis, denies them.

20.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and on that basis, denies them.

21.     P&G admits that its "Secret" line of products includes an antiperspirant branded as "Secret Powder Fresh 24 HR Aerosol" and that said product has been distributed to and sold in various locations across the United States.  Except as otherwise admitted, P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint, and on that basis, denies them.

22.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint, and on that basis, denies them.

23.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint, and on that basis, denies them.

24.     P&G denies that any of its products have been "contaminated" with benzene. P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24 of the Complaint, and on that basis, denies them.

25.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint, and on that basis, denies them.

26.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint, and on that basis, denies them.

27.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint, and on that basis, denies them.

28.     P&G admits that UPC number 037000711087 corresponds to the product identified in Paragraph 28 of the Complaint.  P&G further admits that the last nine digits in said UPC number and the digits "1234" appear in photographs attached as Exhibit B to the Complaint.  P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28 of the Complaint, and on that basis, denies them.

29.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint, and on that basis, denies them.

30.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint, and on that basis, denies them.

31.     P&G denies that a singular "Secret Powder Fresh Aerosol" product has been manufactured and marketed since the 1980s and therefore denies the allegations in Paragraph 31 of the Complaint.

32.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Complaint, and on that basis, denies them.

33.     P&G denies the allegations in Paragraph 33 of the Complaint.

34.     Paragraph 34 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 34 of the Complaint.

35.     Paragraph 35 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 35 of the Complaint.

36.     P&G admits that benzene is not listed as an active or inactive ingredient in any of its Secret products.  P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36 of the Complaint, and on that basis, denies them.

37.     Paragraph 37 of the Complaint contains legal conclusions to which no response is required.  P&G denies that any further warnings or label notifications are warranted or required by law.  P&G's products comply with FDA regulations and all other applicable laws or regulations, including those governing product labels.  To the extent a response may be required, P&G denies the remaining allegations in Paragraph 37 of the Complaint.

38.     P&G admits that deodorants may be used to "prevent or mask the odor of perspiration" and that antiperspirants reduce the production of perspiration (sweat) at the application site.  P&G further admits that the "product referred to in this Complaint" may be "applied to the body as a spray."  P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 38 of the Complaint, and on that basis, denies them.

39.     Paragraph 39 of the Complaint contains legal conclusions to which no response is required.  To the extent that Paragraph 39 of the Complaint purports to summarize, interpret, or quote from any U.S. Food and Drug Administration ("FDA") regulation, guidance document, or other source of law, those sources speak for themselves, and P&G denies any characterization of those sources that is inconsistent with their content.  P&G otherwise lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 39 of the Complaint, and on that basis, denies them.

40.     Paragraph 40 of the Complaint contains legal conclusions to which no response is required.  P&G admits that certain of Paragraph 40's language appears in 21 C.F.R. 211.84.  To the extent that Paragraph 40 of the Complaint purports to summarize, interpret, or quote from 21 C.F.R. 211.84, that regulation speaks for itself, and P&G denies any characterization of that regulation that is inconsistent with its content.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 40 of the Complaint.

41.     P&G admits that benzene is classified as a human carcinogen, a substance that could potentially contribute to the development of cancer depending on the level and extent of exposure.  P&G otherwise denies the allegations in Paragraph 41 of the Complaint.

42.     P&G admits that a non-binding 2017 document, "Q3C — Tables and List, Guidance for Industry," classifies benzene as a "Class 1" solvent in pharmaceutical products.  To the extent that Paragraph 42 of the Complaint references or purports to summarize, interpret, or quote from the Q3C document or any other source, those sources speak for themselves, and P&G denies any characterization of those sources that is inconsistent with their content.  However, P&G avers that benzene is ubiquitous in the environment and that humans around the world have regular daily exposure to benzene from multiple sources, both indoors and outdoors.  P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint, and on that basis, denies them.

43.     Paragraph 43 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 43

of the Complaint.  P&G avers that benzene is ubiquitous in the environment and that humans have regular daily exposure to benzene from multiple sources.

44.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint, and on that basis, denies them.

45.     Paragraph 45 of the Complaint contains legal conclusions to which no response is required.  P&G admits that, at the time of this Answer, the language quoted in Paragraph 45 appears in the source cited in footnote 7.  To the extent Paragraph 45 of the Complaint references or purports to summarize, interpret, or quote from that source, that source speaks for itself, and P&G denies any characterization of that source that is inconsistent with its content.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 45 of the Complaint.

46.     P&G avers that the link provided in footnote 8 in Paragraph 46 of the Complaint appears to be broken.  Therefore, P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Complaint, and on that basis, denies them.

47.     P&G admits that, at the time of this Answer, the source cited in footnote 9 in Paragraph 47 of the Complaint states that the International Agency for Research of Cancer ("IARC") is part of the World Health Organization, that the IARC "classifies benzene as 'carcinogenic to humans,'" and that the "IARC . . . notes that benzene exposure has been linked with . . . multiple myeloma."  To the extent Paragraph 47 of the Complaint otherwise references or purports to summarize, interpret, or quote from that source, that source speaks for itself, and P&G denies any characterization of that source that is inconsistent with its content.

48.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint regarding the sources and levels of Arlene Foreman's alleged exposure to benzene, and on that basis, denies them.  P&G also lacks knowledge or information sufficient to form a belief as to the soundness, validity, or substance of any of the sources cited in Paragraph 48.  To the extent Paragraph 48 of the Complaint references or purports to summarize or interpret any of those sources, those sources speak for themselves, and P&G denies any characterization of those sources that is inconsistent with their content. P&G further lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding any studies or sources not expressly identified in Paragraph 48 of the Complaint, and on that basis, denies them.  P&G otherwise denies the remaining allegations in Paragraph 48 of the Complaint.

49.     Paragraph 49 of the Complaint contains legal conclusions to which no response is required.  To the extent that Paragraph 49 references or purports to summarize, interpret, or quote any FDA regulation or order, or any other source of information or law, those sources speak for themselves, and P&G denies any characterization of those sources that is inconsistent with their content.  P&G avers that the allegations in Paragraph 49 of the Complaint are facially inconsistent with those in Paragraph 51 of the Complaint to the extent that Paragraph 51 alleges situations identified by the FDA in which the presence of benzene during the manufacture of drugs is tolerable.  P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 of the Complaint, and on that basis, denies them.

50.     Paragraph 50 of the Complaint contains legal conclusions to which no response is required.  P&G denies the allegations in Paragraph 50 to the extent that they represent that the

quoted material includes the parenthetical "(i.e. benzene)" or the bracketed editorialization "[to 2 ppm]."  P&G otherwise admits that the remaining quoted language appears in at least some versions of the FDA's nonbinding recommendations in its "Q3C – Tables and List, Guidance for Industry" guidance document.  To the extent that Paragraph 50 of the Complaint references or purports to summarize, interpret, or quote from the FDA's Q3C guidance document or any other source, those sources speak for themselves, and P&G denies any characterization of those sources that is inconsistent with their content.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 50 of the Complaint.

51.     Paragraph 51 of the Complaint contains legal conclusions to which no response is required.  P&G admits that the quoted language appears in at least some versions of the FDA's nonbinding recommendations in its "Q3C – Tables and List, Guidance for Industry" guidance document.  To the extent that Paragraph 51 of the Complaint references or purports to summarize, interpret, or quote from the FDA's Q3C guidance document or any other source, those sources speak for themselves, and P&G denies any characterization of those sources that is inconsistent with their content.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 51 of the Complaint.

52.     Paragraph 52 of the Complaint contains legal conclusions to which no response is required.  P&G lacks knowledge or information sufficient to form a belief as to the soundness or validity of any methods employed by Valisure in conducting the testing alleged in Paragraph 52.  To the extent that Paragraph 52 references or purports to summarize or interpret the Valisure Report or any other source, those sources speak for themselves, and P&G denies any characterization of those sources that is inconsistent with their content.  To the extent any further

response may be required, P&G denies the remaining allegations in Paragraph 52 of the Complaint.

53.     Paragraph 53 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 53 of the Complaint.

54.     Paragraph 54 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 54 of the Complaint.

55.     Paragraph 55 of the Complaint contains legal conclusions to which no response is required.  P&G denies that the material quoted in Paragraph 55 appears as it has been quoted in either 21 U.S.C. § 331(a) or 21 U.S.C. § 352(a).  P&G admits that Paragraph 55 purports to summarize 21 U.S.C. § 331(a) and 21 U.S.C. § 352(a) and to interpret or state the contents of these statutes.  These statutes speak for themselves, and P&G denies any characterization of these statutes that is inconsistent with their content.  To the extent any further response may be required, P&G denies the allegations in Paragraph 55 of the Complaint.

56.     Paragraph 56 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 56 of the Complaint.

57.     Paragraph 57 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 57 of the Complaint.

58.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Complaint regarding Arlene Foreman's illness or the

sources and levels of Arlene Foreman's alleged exposure to benzene, and on that basis, denies them. To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 58 of the Complaint.

59.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Complaint, and on that basis, denies them.

60.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Complaint, and on that basis, denies them.

61.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Complaint, and on that basis, denies them.

62.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Complaint, and on that basis, denies them.

63.     P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Complaint, and on that basis, denies them.

64.     Paragraph 64 of the Complaint contains legal conclusions to which no response is required. P&G admits that Paragraph 64 references and purports to summarize, interpret, or quote from LA. C.C. art. 2315.2(A)(1). This statute speaks for itself, and P&G denies any characterization of this statute that is inconsistent with its content. To the extent any further response may be required, P&G denies the allegations in Paragraph 64 of the Complaint.

65.     Paragraph 65 of the Complaint contains legal conclusions to which no response is required. P&G admits that Paragraph 65 references and purports to summarize, interpret, or quote from LA. C.C. art. 2315.2(A)(1). This statute speaks for itself, and P&G denies any characterization of this statute that is inconsistent with its content. To the extent a response may be required, P&G denies the allegations in Paragraph 65 of the Complaint.

66.     Paragraph 66 of the Complaint contains legal conclusions to which no response is required.  P&G admits that Paragraph 66 references and purports to summarize, interpret, or quote from LA. C.C. art. 2315.2(A)(1).  This statute speaks for itself, and P&G denies any characterization of this statute that is inconsistent with its content.  To the extent a response may be required, P&G denies the allegations in Paragraph 66 of the Complaint.

67.     Paragraph 67 of the Complaint contains legal conclusions to which no response is required.  P&G admits that Paragraph 67 references and purports to interpret LA. C.C. art. 2315.2(A)(1).  This statute speaks for itself, and P&G denies any characterization of this statute that is inconsistent with its content.  To the extent a response may be required, P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67, and on that basis, denies them.

68.     Paragraph 68 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 68 of the Complaint.

69.     Paragraph 69 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 69 of the Complaint.

70.     Paragraph 70 of the Complaint contains legal conclusions to which no response is required.  P&G admits that certain of its products have been distributed to or sold in Louisiana.  To the extent any further response may be required, P&G denies the allegations in Paragraph 70 of the Complaint.

71.     Paragraph 71 of the Complaint contains legal conclusions to which no response is required.  P&G admits that certain of its products have been distributed to or sold in Louisiana.

To the extent any further response may be required, P&G denies the allegations in Paragraph 71 of the Complaint.

72.     Paragraph 72 of the Complaint contains legal conclusions to which no response is required.  P&G admits that certain of its products have been distributed to or sold in Louisiana. To the extent any further response may be required, P&G denies the allegations in Paragraph 72 of the Complaint.

73.     Paragraph 73 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 73 of the Complaint.

74.     Paragraph 74 of the Complaint contains legal conclusions to which no response is required.  To the extent that Paragraph 74 of the Complaint purports to summarize, interpret, or quote from the Louisiana Products Liability Act ("LPLA"), that statute speaks for itself, and P&G denies any characterization of that statute that is inconsistent with its content.  P&G lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Arlene Foreman purchased or used any P&G products, and on that basis, denies them.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 74 of the Complaint.

75.     P&G admits that benzene is not listed as an active or inactive ingredient in Secret. P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 75 of the Complaint and, on that basis, denies them.

76.     P&G admits the allegations in Paragraph 76 of the Complaint.  P&G further avers that the four-step process described in footnote 10 of Paragraph 76 of the Complaint is a high-

level description of P&G's approach to product safety and does not comprehensively describe the numerous processes and methods through which P&G ensures product safety.

77.     P&G admits the allegations in Paragraph 77 of the Complaint.  P&G further avers that the four-step process described in footnote 11 of Paragraph 77 of the Complaint is a high-level description of P&G's approach to product safety and does not comprehensively describe the numerous processes and methods through which P&G ensures product safety.

78.     P&G admits the allegations in Paragraph 78 of the Complaint.  P&G further avers that the evaluation process described in footnote 12 of Paragraph 78 of the Complaint is a high-level description of P&G's approach to ingredient evaluation and product safety and does not comprehensively describe the numerous processes and methods through which P&G evaluates ingredients and ensures product safety.

79.     P&G admits the allegations in Paragraph 79 of the Complaint.  P&G further avers that the evaluation process described in footnote 13 of Paragraph 79 of the Complaint is a high-level description of P&G's approach to ingredient evaluation and product safety and does not comprehensively describe the numerous processes and methods through which P&G evaluates ingredients and ensures product safety.

80.     Paragraph 80 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 80 of the Complaint.

81.     Paragraph 81 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 81 of the Complaint.

82.     Paragraph 82 of the Complaint contains legal conclusions to which no response is required.  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that basis, denies them.  To the extent any further response may be required, P&G denies the allegations in Paragraph 82 of the Complaint.

83.     Paragraph 83 of the Complaint contains legal conclusions to which no response is required.  P&G admits that UPC number 037000711087 was identified in its voluntary recall announcement as subject to the voluntary recall.  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that basis, denies them.  P&G denies Paragraph 83 to the extent that the Valisure Citizen's Complaint to the FDA is not attached to the Complaint.  P&G also lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 regarding the testing purportedly conducted by Valisure, and on that basis, denies them.  To the extent any further response may be required, P&G denies the allegations in Paragraph 83 of the Complaint.

84.     Paragraph 84 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that basis, denies the allegations in Paragraph 84 of the Complaint.

85.     Paragraph 85 of the Complaint contains legal conclusions to which no response is required.  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that

basis, denies them.  To the extent any further response may be required, P&G denies the allegations in Paragraph 85 of the Complaint.

86.     Paragraph 86 of the Complaint contains legal conclusions to which no response is required.  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that basis, denies them.  To the extent any further response may be required, P&G denies the allegations in Paragraph 86 of the Complaint.

87.     Paragraph 87 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 87 of the Complaint.

88.     Paragraph 88 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 88 of the Complaint.

89.     Paragraph 89 of the Complaint contains legal conclusions to which no response is required.  P&G denies that any of its products have been "contaminated" with benzene.  P&G denies that any P&G products that may have been purchased or used by Arlene Foreman contained benzene at levels sufficient to present a risk of adverse health consequences.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 89 of the complaint.

90.     Paragraph 90 of the Complaint contains legal conclusions to which no response is required.  P&G denies that any of its products have been "contaminat[ed]" with benzene.  P&G further denies that any P&G products that may have been purchased or used by Arlene Foreman contained benzene at levels sufficient to present a risk of adverse health consequences.  P&G

otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 of the Complaint, and on that basis, denies them.

91.     Paragraph 91 of the Complaint contains legal conclusions to which no response is required.  P&G otherwise denies the allegations in Paragraph 91 of the Complaint.

92.     Paragraph 92 of the Complaint contains legal conclusions to which no response is required.  P&G otherwise denies the allegations in Paragraph 92 of the Complaint.

93.     Paragraph 93 of the Complaint contains legal conclusions to which no response is required.  P&G otherwise denies the allegations in Paragraph 93 of the Complaint.

94.     Paragraph 94 of the Complaint contains legal conclusions to which no response is required.  P&G otherwise denies the allegations in Paragraph 94 of the Complaint.

95.     Paragraph 95 of the Complaint contains legal conclusions to which no response is required.  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that basis, denies them.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 95 of the Complaint.

96.     Paragraph 96 of the Complaint contains legal conclusions to which no response is required.  P&G admits that benzene is not listed as an active or inactive ingredient in its Secret Powder Fresh 24 Hr Aerosol products.  P&G denies that Secret Powder Fresh 24 Hr Aerosol has a "defect."  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that basis, denies them.  To the extent any further response may be required, P&G denies the allegations in Paragraph 96 of the Complaint.

97.     Paragraph 97 of the Complaint contains legal conclusions to which no response is required.  P&G denies that Secret Powder Fresh 24 Hr Aerosol has a "defect."  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that basis, denies them.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 97 of the Complaint.

98.     Paragraph 98 of the Complaint contains legal conclusions to which no response is required.  P&G denies that Secret Powder Fresh 24 Hr Aerosol has a "defect."  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that basis, denies them.  To the extent a response may be required, P&G denies the allegations in Paragraph 98 of the Complaint.

99.     Paragraph 99 of the Complaint contains legal conclusions to which no response is required.  P&G denies that Secret Powder Fresh 24 Hr Aerosol has a "defect."  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that basis, denies them.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 99 of the Complaint.

100.    Paragraph 100 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 100 of the Complaint.

101.    Paragraph 101 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 101 of the Complaint.

102.    Paragraph 102 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 102 of the Complaint.

103.    Paragraph 103 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 103 of the Complaint.

104.    Paragraph 104 of the Complaint contains legal conclusions to which no response is required.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 104 of the Complaint.

105.    Paragraph 105 of the Complaint contains legal conclusions to which no response is required.  P&G admits that the quoted language appears in substantially similar form in the November 3, 2021, Valisure petition referenced in Paragraph 105.  To the extent Paragraph 105 purports to summarize or interpret the referenced Valisure petition, that petition speaks for itself, and P&G denies any characterization of that petition that is inconsistent with its content.  To the extent any further response may be required, P&G denies the allegations in Paragraph 105 of the Complaint.

106.    Paragraph 106 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 106 of the Complaint.

107.     Paragraph 107 of the Complaint contains legal conclusions to which no response is required.  P&G denies that any of its products have been "contaminated" with benzene.  P&G further denies that any P&G products that may have been purchased or used by Arlene Foreman contained benzene at levels sufficient to present a risk of adverse health consequences.  To the extent any further response may be required, P&G denies the remaining allegations in Paragraph 107 of the Complaint.

108.     Paragraph 108 of the Complaint contains legal conclusions to which no response is required.  P&G denies that Secret Powder Fresh 24 Hr Aerosol has a "defect."  To the extent an additional response may be required, P&G denies the remaining allegations in Paragraph 108 of the Complaint.

109.     Paragraph 109 of the Complaint contains legal conclusions to which no response is required.  P&G denies that Secret Powder Fresh 24 Hr Aerosol was "defective."  To the extent an additional response may be required, P&G denies the allegations in Paragraph 109 of the Complaint.

110.     Paragraph 110 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 110 of the Complaint.

111.     Paragraph 111 of the Complaint contains legal conclusions to which no response is required.  P&G otherwise lacks knowledge or information sufficient to form a belief as to the truth of allegations regarding unspecified products and unspecified timeframes, and on that basis, denies them.  To the extent any further response may be required, P&G denies the allegations in Paragraph 111 of the Complaint.

112.     Paragraph 112 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 112 of the Complaint.

113.     Paragraph 113 of the Complaint contains legal conclusions to which no response is required.  P&G admits that, based on an internal review, P&G announced a voluntary recall of certain products due to the unexpected presence of benzene at levels that would not be expected to cause adverse health consequences.  P&G otherwise denies the allegations in Paragraph 113 of the Complaint.

114.     Paragraph 114 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 114 of the Complaint.

115.     Paragraph 115 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 115 of the Complaint.

116.     Paragraph 116 of the Complaint contains legal conclusions to which no response is required.  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on that basis, denies them.  To the extent a response may be required, P&G denies the allegations in Paragraph 116 of the Complaint.

117.     Paragraph 117 of the Complaint contains legal conclusions to which no response is required.  P&G admits that UPC number 037000711087 was identified in its voluntary recall announcement as subject to the voluntary recall.  P&G lacks knowledge or information sufficient to form a belief as to the truth of any allegations regarding Arlene Foreman's purchase or use of

any of P&G's products, and on that basis, denies them.  P&G denies Paragraph 117 to the extent

that the Valisure Citizen's Complaint to the FDA is not attached to the Complaint.  P&G also

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 117 regarding the testing purportedly conducted by Valisure, and on that basis, denies

them.  To the extent any further response may be required, P&G denies the allegations in

Paragraph 117 of the Complaint.

118.    Paragraph 118 of the Complaint contains legal conclusions to which no response

is required.  To the extent a response may be required, P&G denies the allegations in Paragraph

118 of the Complaint.

119.    Paragraph 119 of the Complaint contains legal conclusions to which no response

is required.  P&G lacks knowledge or information sufficient to form a belief as to the truth of

any allegations regarding Arlene Foreman's purchase or use of any of P&G's products, and on

that basis, denies them.  To the extent any further response may be required, P&G denies the

allegations in Paragraph 119 of the Complaint.

120.    P&G lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 120 of the Complaint, and on that basis, denies them.

121.    Paragraph 121 of the Complaint contains legal conclusions to which no response

is required.  P&G otherwise lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 121 of the Complaint, and on that basis, denies them.

122.    Paragraph 122 of the Complaint contains legal conclusions to which no response

is required.  To the extent a response may be required, P&G denies the allegations in Paragraph

122 of the Complaint.

123.     Paragraph 123 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, P&G denies the allegations in Paragraph 123 of the Complaint.

124.     Paragraph 124 of the Complaint contains legal conclusions to which no response is required.  P&G denies that Plaintiffs are entitled to any relief, including any expert fees or expenses taxed as costs.  To the extent any further response may be required, P&G denies the allegations in Paragraph 124 of the Complaint.

125.     Paragraph 125 of the Complaint contains legal conclusions to which no response is required.

## PLAINTIFFS' PRAYER FOR RELIEF

P&G denies that Plaintiffs are entitled to any relief, including a judgement in their favor, damages, costs of suit, pre- or post-judgment interest, or any other relief.

## PLAINTIFFS' JURY DEMAND

Plaintiffs' Jury Demand contains legal conclusions to which no response is required.

## AFFIRMATIVE DEFENSES

As to affirmative defenses to the Complaint, P&G does not, by stating the matters set forth in these defenses, assume the burden of proof or persuasion on any matters as to which Plaintiffs have the burden of proof or persuasion. The following affirmative defenses are based on P&G's knowledge, information, and belief at this time, and P&G specifically reserves the right to modify, amend, or supplement any affirmative defense contained in this Answer.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Indispensable Parties)

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to join indispensable parties.

## THIRD AFFIRMATIVE DEFENSE

### (Preclusion)

Plaintiffs' claims are barred, in whole or in part, by the Class Action Settlement Agreement and Release, ECF No. 23-1, in *In re: Procter & Gamble Aerosol Products Marketing and Sales Practices Litigation*, No. 2:22-md-3025 (S.D. Ohio).

## FOURTH AFFIRMATIVE DEFENSE

### (Express Preemption)

The claims should be dismissed by reason of express preemption by the Food Drug and Cosmetic Act, 21 U.S.C. 21 U.S.C. § 341, *et seq.*, and the regulations promulgated thereunder.

## FIFTH AFFIRMATIVE DEFENSE

(Implied Preemption)

The claims should be dismissed by reason of implied preemption by the Food Drug and Cosmetic Act, 21 U.S.C. 21 U.S.C. § 341, *et seq.*, and the regulations promulgated thereunder.

## SIXTH AFFIRMATIVE DEFENSE

(Abstention)

The claims should be dismissed because the Court should abstain from proceeding since the labeling issues raised by the action are within the jurisdiction of the United States Food and Drug Administration ("FDA").

## SEVENTH AFFIRMATIVE DEFENSE

(Legal Privilege and Compliance)

The claims should be dismissed because the labels of the products at issue were authorized by and/or fully comply with the FDA's regulations, standards, and policies.

## EIGHTH AFFIRMATIVE DEFENSE

(Compliance with Safety Standards)

Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

## NINTH AFFIRMATIVE DEFENSE

(Primary Jurisdiction)

The claims should be dismissed pursuant to the doctrine of primary jurisdiction because Plaintiffs' claims raise issues that should be addressed in the first instance by the FDA.

## TENTH AFFIRMATIVE DEFENSE

(Prescription, Statute of Limitations, Statute of Repose, and Laches)

Plaintiffs' claims are barred, in whole or in part, by prescription, the applicable statutes of limitations and statutes of repose, and/or by the equitable doctrine of laches.

## ELEVENTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs have failed to act reasonably to mitigate their alleged damages, if any.

## TWELFTH AFFIRMATIVE DEFENSE

(Waiver and Estoppel)

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver and estoppel.

## THIRTEENTH AFFIRMATIVE DEFENSE

(Unclean Hands)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTEENTH AFFIRMATIVE DEFENSE

(Ratification)

Plaintiffs' claims are barred, in whole or in part, because of ratification, agreement, acquiescence, or consent to P&G's alleged conduct.

## FIFTEENTH AFFIRMATIVE DEFENSE

(Applicability and Exclusivity of LPLA)

P&G specifically pleads the applicability and exclusivity of the LPLA and specifically avers that Plaintiffs are not entitled to recover under any of the exclusive theories of liability set forth in the LPLA.

## SIXTEENTH AFFIRMATIVE DEFENSE

(LPLA Section 2800.54)

P&G's Secret Powder Fresh 24 HR Aerosol products were not unreasonably dangerous "at the time the product left the control of its manufacturer," nor was any characteristic that may have rendered the products unreasonably dangerous, none being admitted, a "reasonably anticipated alteration or modification of the product," as required to sustain Plaintiffs' claims under the Louisiana Products Liability Act, La. R.S. 9:2800.54.

## SEVENTEENTH AFFIRMATIVE DEFENSE

(LPLA Section 2800.59)

P&G specifically avers the applicability of the Louisiana Products Liability Act, La. R.S. 9:2800.59, and avers that its product was designed, manufactured, packaged, labeled, sold, and distributed in conformity with the then-existing reasonably available scientific and technological knowledge, and therefore, P&G is not liable.

## EIGHTEENTH AFFIRMATIVE DEFENSE

(State of the Art)

Plaintiffs' claims are barred, in whole or in part, because P&G's product was designed, manufactured, distributed, marketed, and labeled with proper warnings, information, cautions, and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.  P&G invokes all state of the art defenses applicable to Plaintiffs' claims, including the state of the art applicable to the industry in question, medicine, medical science, and all others.  P&G avers that it discharged, according to law and due care, each and every duty which Plaintiffs may have been owed.

## NINETEENTH AFFIRMATIVE DEFENSE

(Products Not Defective or Unreasonably Dangerous)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

## TWENTIETH AFFIRMATIVE DEFENSE

(Sufficient Warning)

Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.  Among other things, the product labels complied with the rules and regulations promulgated by the FDA.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

(No Duty to Warn Under Restatement)

Plaintiffs' claims are barred, in whole or in part, by the doctrine contained in Restatement (Second) of Torts § 402A, comment j.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

(Misuse and Failure to Follow Instructions)

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' misuse or abnormal use of the product or failure to follow instructions.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

(No Privity)

Plaintiffs' claims are barred, in whole or in part, because P&G had no legal relationship or privity with plaintiffs and owed no duty to them by which liability could be attributed to it.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

(No Express Warranty)

P&G made no express representations or warranties of any kind to Plaintiffs, and P&G disclaimed all such express warranties.  If any such warranties were made, which P&G specifically denies, the Plaintiffs failed to give notice of any breach thereof.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

(Satisfaction of Guarantees, Representations, and/or Warranties)

If any warranty, guarantee, or other representation with respect to any of P&G's Secret Powder Fresh 24 HR Aerosol products was made, then each such warranty, guarantee, or representation was fully satisfied.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

(No Causation)

Plaintiffs' claims are barred, in whole or in part, because to the extent Plaintiffs have been injured or damaged, no injuries or damages being admitted, such injuries or damages were not caused by a P&G product.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

(Proximate Causation)

Plaintiffs' claims are barred, in whole or in part, because any alleged negligent or culpable conduct of P&G, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of Plaintiffs' alleged injuries.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

(Intervening Causation)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' injuries, if any, were the result of conduct of Plaintiffs, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening, and superseding causes of the alleged injuries, including but not limited to Plaintiffs' pre-existing medical conditions, diseases, and/or causes that are not related or connected with any product sold, distributed, or manufactured by P&G.  Such acts or omissions on the part of diseases or causes constitute an independent, intervening, and sole proximate cause of Plaintiffs' alleged injuries or damages.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

(Speculative or Uncertain Damages)

The relief sought by Plaintiffs is barred, in whole or in part, because the alleged damages sought are too speculative, remote, or uncertain, and because of the impossibility of the ascertainment and allocation of such alleged damages.

## THIRTIETH AFFIRMATIVE DEFENSE

(P&G Not Liable)

Plaintiffs' claims are barred, in whole or in part, because any alleged harms, injuries, losses, or damages sustained by Plaintiffs were caused by the acts or omissions of persons, instrumentalities and/or agencies over which P&G had no control and for whose acts and/or omissions P&G is not liable.  For the avoidance of doubt, P&G avers that Plaintiffs bear the burden of proof on these issues.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

(Assumption of Risk)

If Plaintiffs have sustained injuries or losses as alleged in the Complaint, such injuries or losses were only sustained after Plaintiffs or Plaintiffs' decedent knowingly, voluntarily, and willfully assumed the risk of any injury as the result of the use of, consumption of, administration of, or exposure to the product at issue.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

(Comparative Fault and Contributory Negligence)

Any injuries, damages, or losses sustained by Plaintiffs or Plaintiffs' decedent were directly and proximately caused by or contributed to by Plaintiffs' or Plaintiffs' decedents own negligence and comparative fault, and/or by the negligence and comparative fault of third parties.  Therefore, any recovery should be diminished, reduced, offset, or barred in accordance with the principles of comparative fault and/or contributory negligence, and P&G pleads for apportionment.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

(Offset)

Plaintiffs' claims are barred, in whole or in part, because if Plaintiffs suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from acts or omissions of persons or entities for which P&G is entitled to an assessment of the relative degree of fault of all such persons and entities.  Such acts or omissions on the part of others constitute an independent, intervening, and sole proximate cause of Plaintiffs' alleged injuries or damages.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

(Settlement Offset)

In the event that Plaintiffs receive a settlement from any party or non-party for the injuries described in the Complaint, P&G is entitled to a full set-off for the amount of each such settlement.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

(Collateral Sources Offset)

Plaintiffs' recovery, if any, shall be reduced by those payments that Plaintiffs receive from collateral sources.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

(Spoliation)

P&G asserts as a defense the doctrine of spoliation of evidence in the event that Plaintiffs or others failed to properly preserve the P&G products described in the Complaint, or any other evidence.

## RESERVATION OF RIGHTS

P&G hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves the right to amend its Answer to assert such defenses.  P&G further reserves all legal defenses that it may have against the Plaintiffs.

## JURY DEMAND

P&G demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, P&G prays for the following relief:

1. Dismissing the Complaint with prejudice;

2. That judgment on the Complaint, and on each cause of action therein, be entered in favor of P&G;

3. That this Court denies Plaintiffs relief of any kind;

4. That P&G be awarded its costs incurred, including reasonable attorneys' fees; and

5. For such other or further relief as this Court may deem just and equitable.

Dated: March 12, 2024

Respectfully Submitted,

/s/ *Amy L. McIntire*
Brent A. Talbot (#19174)
Michael D. Carleton (#01289)
Amy L. McIntire (#35241)
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
talbot@chaffe.com
carleton@chaffe.com
mcintire@chaffe.com

*Counsel for Defendant The Procter & Gamble Company*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2024, a true and correct copy of the foregoing pleading was served on counsel of record for all parties via the Court's e-filed/ECF system.

/s/ *Amy L. McIntire*